UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:03-CR-98 |
| | ) | |
| GEORGE H. SIMPSON | ) | |

<u>REPORT AND RECOMMENDATION</u>

Defendant is charged with the crime of escape. He has filed a motion asking that the indictment against him be dismissed on double jeopardy grounds [Doc. 18]. That motion has referred to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and the standing order of the Court. A hearing was held on September 26, 2005.

The facts are undisputed and were stipulated:

In 2003, defendant was serving a 481-month federal prison sentence at USP, Terre Haute, Indiana. Inasmuch as defendant had outstanding state charges pending against him, he demanded that he be returned to Sullivan County, Tennessee, to resolve those charges. Defendant was transported to Sullivan County and was confined in the Sullivan County Jail pending his appearance in state court. On October 28, 2003, defendant escaped from the Sullivan County Jail. He subsequently was captured and thereafter returned to USP, Terre Haute. After his return to the prison, defendant was administratively "charged" with escape by prison officials in violation of 28 C.F.R. § 541.13, Code 102 (1993). After a disciplinary hearing held on February 24, 2004,

defendant was given sixty days of disciplinary segregation, forty days disallowance of credit for good behavior, and six months loss of visitation privileges.

Defendant subsequently was indicted in this Court with the criminal offense of escape. In his motion to dismiss the indictment, he alleges that the administrative sanctions imposed by the Bureau of Prisons bars his prosecution in this Court under the double jeopardy clause of the Fifth Amendment to the United States Constitution. He argues that the sanctions levied upon him by the Bureau of Prisons, even if denominated "civil" sanctions, are in effect *criminal* sanctions imposed for the same offense, *viz.*, escape. Defendant relies upon *Hudson v. United States*, 522 U.S. 93 (1997).

In *Hudson*, the three defendants were officers of a bank. They used their positions with the bank to nominally make loans to third parties when, in fact, those loans were made to the defendants themselves. The subterfuge was discovered by the Comptroller of the Currency, who imposed civil monetary civil penalties against each of the defendants. Three years later, the defendants were indicted on charges of conspiracy, misapplication of bank funds, and making false bank entries. The facts underlying the criminal indictment were the same as those that resulted in the civil sanctions imposed by the Comptroller of the Currency. 522 U.S. at 97.

The defendants alleged that the sanctions imposed by the Comptroller of the Currency barred their subsequent criminal prosecution under the double jeopardy clause.

The Supreme Court made the following points in *Hudson*:

2

1. The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . .

   *Id.,* at 92.

2. Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction.

   *Id.*, at 99.

3. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," . . . , as to "transfor[m] what was clearly intended as a civil remedy into a criminal remedy . . . ."

   *Id.*, at 99.

4. In determining whether a civil remedy is so draconian or punitive that it effectively is transformed into a criminal penalty, the court should look at the following factors first enunciated in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963):

   A. Whether the sanction involves an affirmative disability or restraint;

   B. Whether it has historically been regarded as a punishment;

   C. Whether it comes into play only on a finding of *scienter*;

   D. Whether its operation will promote the traditional aims of punishment – retribution and deterrence;

   E. Whether the behavior to which it applies is already a crime;

   F. Whether an alternative purpose to which it may rationally be connected is assignable for it;

   G. Whether it appears excessive in relation to the alternative purpose assigned; and

   H. Only the clearest proof will override the Legislature's intent to transform what that body declared to be a civil remedy into

3

a criminal penalty.

*Id.,* at 99-100.

The Supreme Court finally held that the defendant-petitioner's subsequent prosecution was not barred by the double jeopardy clause. *Id.*, at 103.

Defendant argues that his administrative segregation and loss of "good time credit" is not only a deterrent to disruptive behavior while in prison, but also constitutes *punishment*. He therefore concludes that, under *Hudson*'s criteria, the instant prosecution is barred.

There are no cases from the Sixth Circuit Court of Appeals on point, but there is a wealth of them from other circuits, and all of them are uniformly arrayed against defendant's argument herein. In short, there is no case from any other circuit that supports defendant's argument.[1] At the outset, it is noted that defendant's sentence of 481 months remains 481 months; his sentence has not been increased by so much as one day. He lost only "credits" that were conditioned upon his good behavior; those credits were something to which he was entitled only if he fulfilled the basic condition of behaving in an appropriate manner while in the custody of the Bureau of Prisons.

There is no need for this Magistrate Judge to launch into a long discussion to explain why loss of good time credit and administrative segregation is not "punishment" in the sense of the double jeopardy clause inasmuch as the Court of Appeals for the Eleventh Circuit, in discussing a factual situation essentially identical to the one

---

[1] *See, United States v. Mayes,* 158 F.3d. 1215, 1221 n. 9 (11th Cir. 1998).

4

now under consideration by this Court, has done so far better and more eloquently than could this Magistrate Judge. In *United States v. Mayes*, 158 F.3d 1215 (11th Cir. 1998), the defendants participated in a prison riot at FCI Talladega, as a result of which they were placed in disciplinary segregation and required to forfeit accrued good conduct time. Thereafter, the defendants were indicted for various criminal offenses, including a charge of conspiring to cause a riot in violation of 18 U.S.C. § 1792. Like defendant herein, those defendants pled the prior prison disciplinary sanctions in bar of their subsequent criminal prosecutions on the basis of double jeopardy. The Eleventh Circuit discussed *Hudson* at length, ultimately making these points:

1. The *Kennedy* factors set forth in *Hudson* are not nearly as significant when applied in a context of sanctions imposed by a prison since "a prison's remedial and punitive interests are inextricably related . . . [because] . . . 'the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals' and [those] 'remedial concerns require "punishing" individuals for violent or other disruptive conduct[.]'"

    *Id.*, at 1224.

2. The Court should defer to some extent to the judgment of prison officials in determining the appropriate measures to implement in order to preserve institutional order and discipline, and to encourage good conduct.

    *Id.*

3. The Eleventh Circuit quoted with approval the following language in a case from the Third Circuit, *United States v. Newby*, 11 F.3d 1143 (3th Cir. 1993):

5

> We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline. . . . If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to chose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

158 F.3d. at 1224.

4. Prison officials have no authority to alter the inmates' original criminal sentence. They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules.

*Id.*

5. The sanctions imposed by the prison for the defendant's participation in the riot were not "so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct."

*Id.*

6. The Eleventh Circuit equivocally refused to classify the prison's regulations as "criminal" and the appellants' double jeopardy challenge failed.

*Id.*

It bespeaks the obvious to say that escape from custody is unacceptable conduct by a prisoner and is contrary to the government's interest in maintaining order and discipline in the prison environment. After his escape, the defendant confronted the

6

same sentence as he originally did – 481 months. All he lost by virtue of the administrative sanctions imposed upon him by the Bureau of Prisons was good time credit, precisely the same loss sustained by the defendants in *Mayes, supra.* The sanctions imposed by USP, Terre Haute, were civil and remedial, not criminal.

It is therefore respectfully recommended that defendant's motion to dismiss the indictment be DENIED.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

Respectfully submitted,

                 s/ Dennis H. Inman
                 United States Magistrate Judge

7

Case 2:03-cr-00098-JRG   Document 24   Filed 09/26/05   Page 7 of 7   PageID #: 7